UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

HOLLY S.,

                              Plaintiff,

  v.                                                          5:22-CV-1042
                                                                              (LEK/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

HOWARD D. OLINSKY, ESQ., for Plaintiff
JASON P. PECK, Special Asst. U.S. Attorney, for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

Plaintiff commenced this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security, denying her application for benefits. Plaintiff did not consent to the jurisdiction of a Magistrate Judge (Dkt. No. 5), and this matter was therefore referred to me for Report and Recommendation by Senior United States District Court Judge Lawrence E. Kahn, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). Both parties filed briefs, which the court treats as motions under Federal Rule of Civil Procedure Rule 12(c), in accordance with General Order 18.

**I.    PROCEDURAL HISTORY**

On December 16, 2020, plaintiff protectively filed an application for Disability Insurance Benefits ("DIB"), alleging disability beginning October 23, 2020. (Administrative Transcript ("T") 85). Plaintiff's application was denied initially on

1

April 1, 2021 (T. 107-10), and upon reconsideration on July 2, 2021 (T. 125-32). On November 22, 2021, Administrative Law Judge ("ALJ") Elizabeth W. Koennecke conducted a hearing during which plaintiff testified. (T. 53-64). On April 5, 2022, the ALJ held a supplemental hearing during which vocational expert ("VE") Mike Galloway testified. (T. 44-50). On April 21, 2022, the ALJ issued a decision denying plaintiff's claim. (T. 11-22). This decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on August 15, 2022. (T. 1-3).

## II.  GENERALLY APPLICABLE LAW

### A.  Disability Standards

To be considered disabled, a plaintiff seeking DIB or Supplemental Security Income benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

## B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review "– even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

3

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  *Id.  See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record.  *See, e.g.*, *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony[.]").  However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III. FACTS

Plaintiff was thirty-five years old on the alleged disability onset date.  (T. 54).  She had a high school degree, and had taken some college courses.  (T. 54-55).  Plaintiff previously worked as a teacher's aide with special need students.  (T. 56).  She testified that in that role, she had to shift between standing and sitting frequently, but was not required to lift anything.  (T. 56).  She stated that a student snapped her right wrist, which was her dominant hand.  (T. 60).  Plaintiff required CMC arthroplasty and carpal tunnel surgery to fix her wrist.  (T. 60).  She continued to experience significant

"numbness and a lot of tingling in that hand." (T. 60). Plaintiff asserted that she had difficulty lifting items, and that her writing was illegible. (T. 61).

In October of 2022, plaintiff was in a car accident that she alleges caused her to develop seizures. (T. 61). She testified that she could only partially anticipate the seizures and that they caused temporary confusion lasting at least fifteen minutes. (T. 63). Plaintiff stated that she was also having issues with her short-term memory and attention span. (T. 63). She also asserted that she injured her lower back and lost feeling in her legs every couple of months. (T. 61). She further testified that she had difficulty walking and could only walk for approximately half the day. (T. 62). Plaintiff stated that she was no longer allowed to drive and relied on family members for transportation. (T. 64).

Plaintiff testified that she was unable to work because of her seizures. (T. 58). She also stated that she suffered from posttraumatic stress disorder ("PTSD"), bipolar disorder, and panic attacks. (T. 58-60). She asserted that her mental impairments caused flashbacks, erratic behavior, and an inability to be around large crowds. (T. 59). Plaintiff attended counseling once a week and was taking medication to treat her mental impairments. (T. 60).

The ALJ's decision provides a detailed statement of the medical and other evidence of record. (T. 14-30). Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV. THE ALJ'S DECISION

The ALJ first determined at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since her alleged onset date of October 23, 2020. (T. 13). Next, the ALJ found that plaintiff has the following severe impairments: mild degenerative disc disease of the lumbar spine, seizure disorder, and all mental diagnoses as variously characterized.[1] (T. 14). At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 15).

At step four, the ALJ found that plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations:

> avoid any exposure to unprotected heights or hazards; no driving; she retains the ability to understand and follow simple instructions and directions, perform simple tasks independently, maintain attention and concentration for simple tasks, regularly attend to a routine and maintain a schedule, and handle simple, repetitive work-related stress, in that she can make occasional decisions directly related to the performance of simple tasks in a position with consistent job duties that does not require her to supervise or manage the work of others; should avoid work requiring more complex interaction or joint effort to achieve work goals; and can tolerate superficial contact with the public.

(T. 18).

In making the RFC determination, the ALJ stated that she considered all of plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" (T.

---

[1] The ALJ noted "[during] any given encounter, mental health professionals have given the [plaintiff] various diagnosis and characterized her mental impairment in various ways. . . . By finding the [plaintiff] to have a 'severe' mental impairment however characterized, all symptoms affecting her mental functioning have been considered." (T. 14)

18). The ALJ further noted that she fully considered "the medical opinion(s) and prior administrative medical finding(s)" pursuant to 20 C.F.R. § 404.1520(c). (T. 18). After considering plaintiff's statements regarding her symptoms, along with the other evidence of record, the ALJ concluded that the plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (T. 26). The ALJ then determined that plaintiff was able to perform her past relevant work as a child-care attendant for a school. (T. 31). Accordingly, the ALJ ruled that plaintiff was not disabled from October 23, 2020 through the date of the decision. (T. 34).

## V.  ISSUE IN CONTENTION

Plaintiff argues the ALJ failed to properly evaluate the medical opinion of consultative examiner Dr. Jeanne Shapiro. (Plaintiff's Brief ("Pl.'s Br.") at 9-15) (Dkt. No. 14). Defendant contends that the Commissioner's determination should be affirmed because the ALJ properly considered Dr. Shapiro's opinion and the ALJ's RFC was supported by substantial evidence. (Defendant's Brief ("Def.'s Br.") at 4-13) (Dkt. No. 19). For the reasons stated below, this court agrees with the defendant and finds the ALJ's decision was supported by substantial evidence.

## DISCUSSION

## VI.  RFC/EVALUATING MEDICAL EVIDENCE/EVALUATING SUBJECTIVE SYMPTOMS

### A.  Legal Standards

#### 1.  RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work

activities in an ordinary work setting on a regular and continuing basis . . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill*, No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). An ALJ must specify the functions plaintiff can perform and may not simply make conclusory statements regarding a plaintiff's capacities. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD),

8

2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2. Evaluation of Medical Opinion Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853. An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency

9

factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

### 3. Evaluation of Subjective Symptoms

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). The ALJ must "'carefully consider' all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their]

pain or other symptoms.'" *Del Carmen Fernandez v. Berryhill*, No. 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); Social Security Ruling ("SSR") 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 2016 WL 1020935, 81 Fed. Reg. 14166-01 at 14169-70, (Mar. 16, 2016)).

In 2016 the Commissioner eliminated the use of the term "credibility" from the "sub-regulatory policy" because the regulations themselves do not use that term. SSR 16-3p, 81 Fed. Reg. at 14167. Instead, symptom evaluation tracks the language of the regulations.[2] The evaluation of symptoms involves a two-step process. First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

If so, at the second step, the ALJ must consider "'the extent to which [the plaintiff's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the plaintiff's] symptoms affect [her] ability to work.'" *Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (citing inter alia 20 C.F.R. § 404.1529(a); *Genier v. Astrue*, 606 F.3d at 49)) (alterations in original).[3]

---

[2] The standard for evaluating subjective symptoms has not changed in the regulations. Rather, the term "credibility" is no longer used, and SSR 16-3p makes it clear that the evaluation of the plaintiff's symptoms is not "an evaluation of the claimant's character." 81 Fed. Reg. at 14167. The court will remain consistent with the terms as used by the Commissioner.

[3] The court in *Barry* also cited SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996) which was superceded by SSR 16-3p. As stated above, the factors considered are the same under both rulings. The 2016 ruling has removed the emphasis on "credibility."

11

If the objective medical evidence does not substantiate the plaintiff's symptoms, the ALJ must consider the other evidence. *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013). The ALJ must assess the plaintiff's subjective complaints by considering the record in light of the following symptom-related factors: (1) plaintiff's daily activities; (2) location, duration, frequency, and intensity of plaintiff's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the plaintiff to relieve symptoms; and (7) any other factors concerning plaintiff's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

**B.    Analysis**

Plaintiff argues the ALJ failed to properly consider consultative examiner Dr. Jeanne Shapiro's opinion. (Pl.'s Br. at 9-15). On March 22, 2021, Dr. Shapiro completed a psychiatric evaluation of plaintiff. (T. 439-44). The ALJ found Dr. Shapiro's opinion less persuasive. (T. 28). The ALJ accepted Dr. Shapiro's findings that plaintiff "did not appear to have any limitations understanding, remembering, and applying simple or complex instructions and directions or using reason and judgment to make work-related decisions and that the [plaintiff] had no limitations maintaining personal hygiene and appropriate attire or being aware of normal hazards and taking appropriate precautions." (T. 28). However, the ALJ rejected Dr. Shapiro's findings that plaintiff "appeared to have marked limitations interacting adequately with supervisors, coworkers, and the public; moderate-to-marked limitations sustaining concentration and performing tasks at a consistent pace; marked limitations sustaining

an ordinary routine and regular attendance at work; marked limitations regulating emotions, controlling behaviors, and maintaining wellbeing." (T. 28).

With respect to the applicable regulations, the ALJ noted that a portion of Dr. Shapiro's opinion "seems to have been primarily based on the [plaintiff's] subjective report of her own functional limitations, rather than on any clinical findings made by Dr. Shapiro during the [plaintiff's] one-time examination." (T. 29). In doing so, the ALJ addressed how Dr. Shapiro's opinions are not supported by her own clinical findings. *Cf. Cynthia F. v. Kijakazi*, No. 5:20-CV-1488 (GTS/TWD), 2022 WL 2046300, at *10 (N.D.N.Y June 7, 2022) (finding the ALJ did not adequately explain supportability when the ALJ did not articulate how the clinical findings did not support the opined limitations).

For example, Dr. Shapiro opined that plaintiff would have marked limitations interacting adequately with supervisors, co-workers, and the public (T. 442); however, the ALJ also noted Dr. Shapiro observed plaintiff's behavior during the examination was socially appropriate and plaintiff "was cooperative, with an adequate manner of relating, adequate social skills, an adequate overall presentation, and appropiately focused eye contact" (T. 29). Dr. Shapiro also opined that plaintiff had "moderate-to-marked limitations sustaining concentration and performing tasks at a consistent pace; [and] marked limitations sustaining an ordinary routine and regular attendance at work." (T. 28). However, these opinions do not find support from Dr. Shapiro's observations upon evaluation that plaintiff's attention and concentration were "grossly intact," and that plaintiff was able to coach cheerleading until the pandemic, coordinate rides for her family, and continue to care for her four children. (T. 29). Accordingly,

13

the ALJ did not err in concluding that certain portions of Dr. Shapiro's opinion lacked support by the consultative examiner. *See, e.g.*, *John W. v. Saul*, No. 20-CV-376, 2022 WL 3142083, at *3 (W.D.N.Y. Aug. 5, 2022) ("The ALJ found [treating source's] medical opinion to be unpersuasive because it appears her opinion is based on Plaintiff's subjective complaints instead of the objective evidence. . . . The ALJ properly articulates that these conclusions are not supported by objective evidence and are not consistent with the record."); *Jennifer M. v. Comm'r of Soc. Sec.*, No. 1:21-CV-980 (GTS/ATB), 2022 WL 19003388, at *7 (N.D.N.Y. Nov. 18, 2022) ("With respect to the supportability factor, the ALJ did discuss how Dr. Gulyas's opinion about plaintiff's inability to sustain work during an eight-hour workday was inconsistent with other findings that the chiropractor made."), *report and recommendation adopted*, 2023 WL 2236607 (N.D.N.Y. Feb. 27, 2023); *Michael K. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1467, 2022 WL 3346930, at *6 (W.D.N.Y. Aug. 12, 2022); *Vecchio v. Comm'r of Soc. Sec.*, No. 20 Civ. 8105, 2021 WL 8013772, at *14 (S.D.N.Y. Dec. 1, 2021), *report and recommendation adopted*, 2022 WL 873175 (S.D.N.Y. Mar. 24, 2022).

Plaintiff argues the ALJ's "omissions of [positive objective] findings and over reliance on subjective reports does not provide an adequate supportability analysis." (Pl.'s Br. at 12-13). Plaintiff takes specific issue with the ALJ's conclusions regarding attention, concentration, and memory skills. (*Id.*). Plaintiff argues the ALJ mischaracterized the examination results of Dr. Shapiro because "[t]he ALJ further found '[plaintiff's] attention and concentration upon exam to be grossly intact.'" (Pl.'s Br. at 13). However, it is clear that the ALJ took this quote verbatim from Dr.

14

Shapiro's opinion, in which she observed that plaintiff's "[a]ttention and concentration skills were grossly intact." (T. 441).

The court does not find the ALJ erred by omitting clear or significant objective findings of Dr. Shapiro. For example, plaintiff emphasized Dr. Shapiro's finding that plaintiff was unable to perform simple calculations. (Pl.'s Br. at 13). While Dr. Shapiro did make that observation, she ultimately opined, more significantly that plaintiff did "not appear to have any limitations understanding, remembering, and applying simple or complex instructions and directions[.]" (T. 442).

Dr. Shapiro also observed that plaintiff's "[r]ecent and remote memory skills were impaired probably due to anxiety and nervousness in the evaluation." (T. 441). Dr. Shapiro further observed plaintiff had poor insight and fair judgment. (T. 442). While the ALJ did not discuss these findings when she considered the persuasiveness of Dr. Shapiro's opinion, the ALJ did discuss both findings earlier in the decision. (T. 16). The ALJ's "explanation must be viewed against the backdrop of the discussion of the treating records that preceded it" and it is "proper to read the ALJ's decision as a whole" to avoid the "needless formality to have the ALJ repeat substantially similar factual analyses." *Jeanette J. v. Saul*, No. 6:19-CV-0795 (ML), 2020 WL 4932047, at *5 (N.D.N.Y. Aug. 24, 2020). When summarizing Dr. Shapiro's opinion, the ALJ noted multiple objective findings including "tense posture, restless motor behavior, a somewhat restricted affect, a reportedly depressed and anxious mood, impaired recent and remote memory skills, and poor insight." (T. 24). This court does not find that the ALJ omitted these findings, simply because she discussed them in an earlier portion of the decision.

15

Plaintiff cites *Navedo v. Kijakazi*, to support his argument that the ALJ erred by overlooking Dr. Shapiro's positive, objective findings. (Pl.'s Br. at 12). However, in *Navedo*, the ALJ failed to discuss the findings of three different providers, whereas here plaintiff is only challenging one provider. *Navedo v. Kijakazi*, 616 F. Supp. 3d 332, 346 (S.D.N.Y. 2022). Additionally, two of the providers in *Navedo* identified nineteen signs and symptoms to support their assessments, while Dr. Shapiro observed few objective findings. (T. 441). Moreover, the ALJ in this case noted numerous objective findings in earlier sections of the decision. (T. 16-17, 24-26).

With respect to consistency, the ALJ concluded Dr. Shapiro's opinion was not consistent with the opinions of the state agency consultants, Dr. Fernandez and Dr. Sherer, who both opined plaintiff "retained the ability to meet the basic mental requirements of work." (T. 29). The ALJ further noted that the state agency consultants were able to review Dr. Shapiro's opinion and other evidence of record. (T. 29). The ALJ was entitled to rely upon the opinions of non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e). *See also Christopher R. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1082 (ATB), 2022 WL 675708, at *6 (N.D.N.Y. Mar. 2, 2022) (the regulations permit the opinions of non-examining sources to override the opinions of treating sources provided they are supported by the evidence in the record); *Baszto v. Astrue*, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010) ("[A]n ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.").

Plaintiff additionally argues the state agency consultants' opinions were stale because they were "only able to review records up to June 28, 2021, the date of reconsideration" (Pl.'s Br. at 13-14).  Plaintiff's claim was evaluated on reconsideration by Dr. Sherer on June 28, 2021, three months after Dr. Shapiro's report, which plaintiff does not challenge on staleness grounds.  (T. 99-103).  The hearings took place on November 22, 2021 (T. 53) and April 5, 2022 (T. 44).  The ALJ's decision was issued on April 21, 2022.  (T. 20).  By itself, "[a] gap of time between when an opinion is rendered and the disability hearing and decision does not automatically invalidate that opinion." *Majdandzic v. Comm'r of Soc. Sec.*, No. 17-CV-1172, 2018 WL 5112273, at *3 (W.D.N.Y. Oct. 19, 2018).  Only a "meaningful change" in plaintiff's condition during the gap will do so.  *Lamar v. Comm'r of Soc. Sec.*, No. 18-CV-829, 2020 WL 548376, at *3 (W.D.N.Y. Feb. 4, 2020).

The post-reconsideration medical records identified by plaintiff "do not change the picture of [p]laintiff's mental functioning, such that the ALJ could no longer rely on the State agency consultant's opinion formulating the RFC." *Renalda R. v. Comm'r of Soc. Sec.*, No. 3:20-CV-00915 (TWD), 2021 WL 4458821, at *9 (N.D.N.Y.4 Sept. 29, 2021) (citing *Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016)).  *See also Jamie H. v. Comm'r of Soc. Sec.*, No. 1:20-CV-01272, 2022 WL 765266, at *15 (W.D.N.Y. Mar. 14, 2022) ("[T]he Court does not agree that the opinions of [inter alia, two state agency consultants] were stale, since, for the reasons already discussed, the record does not indicate that Plaintiff's condition worsened appreciably after [they] rendered their opinions.").  Before the reconsideration date, plaintiff was admitted to the hospital due to her suicidal thoughts.  (T. 716).  While plaintiff has continued to have

17

suicidal thoughts, she has not been hospitalized again. (T. 1239, 1948). Plaintiff correctly points out that plaintiff exhibited ongoing depression and anxiety during visits after the reconsideration date. (T. 1580, 1592). However, plaintiff also exhibited the same symptoms at visits prior to the reconsideration date. (T. 1651, 1658, 1675, 1693). There were even occasions where plaintiff exhibited either no depression or mild depression, after the reconsideration date. (T. 1608-09, 1615, 1626). Significantly, the ALJ's opinion acknowledged and discussed record evidence that post-dated the state agency consultants' opinions. (T. 24-26).

In addition to the state agency consultant's opinions, the mental status examinations observed by various providers supports the ALJ's decision to reject portions of Dr. Shapiro opinion. For example, plaintiff has generally been described as cooperative or pleasant in medical appointments[4] and her affect/mood has been normal.[5] Providers have also consistently observed that plaintiff's judgment, insight, and memory were intact.[6] Many providers observed plaintiff had normal impulse control and attention span. (T. 526, 548, 1241, 1247, 1536, 1909, 1940, 1945, 1949,

---

[4] (T. 458, 480, 482, 485, 488, 490, 492, 526, 597, 637, 650, 698, 724, 729, 736, 760, 775, 783, 792, 801, 805, 854, 987, 989, 992, 997, 1001, 1009, 1012, 1014, 1016, 1019, 1032, 1035, 1037, 1046, 1049, 1051, 1053, 1056, 1081, 1095, 1102, 1109, 1115, 1121, 1126, 1133, 1136, 1241, 1566, 1855, 1861, 1867, 1919, 1925, 1945, 1949, 1955, 1959, 1982).

[5] (T. 448, 526, 533, 548, 554, 565, 579, 590, 597, 613, 618, 622, 628, 646, 650, 655, 661, 664, 674, 679, 686, 691, 698, 713, 719, 729, 760, 1160, 1166, 1173, 1189, 1195, 1206, 1217, 1221, 1247, 1255, 1536, 1543, 1561, 1566, 1829, 1855, 1861, 1867, 1900, 1910, 1919, 1925, 1941).

[6] (T. 526, 548, 637, 640, 650, 664-55, 661, 664, 674, 679, 686, 691, 725, 729, 737, 1221, 1241, 1247, 1255, 1261, 1269, 1276, 1281, 1287, 1536, 1543, 1561, 1566, 1583, 1588, 1595, 1600, 1605, 1611, 1617, 1621, 1632, 1636, 1641, 1647, 1654, 1661, 1665, 1670, 1678, 1683, 1688, 1701, 1855, 1861, 1867, 1910, 1919, 1925, 1941, 1945, 1949, 1955, 1960, 1969).

1955, 1960). Accordingly, the court concludes that the ALJ's consistency analysis with respect to Dr. Shapiro's opinion was supported by substantial evidence.

"In general, under the substantial evidence standard of review, it is not enough for plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position . . . . Plaintiff must [instead] show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record." *Jonathan S. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1177, 2022 WL 44700, at *6 (W.D.N.Y. Jan. 5, 2022); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."). In this case, the plaintiff has not made such a showing.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that plaintiff's motion for judgment on the pleadings (Dkt. Nos. 14, 21) be **DENIED;** and it is further

**RECOMMENDED,** that defendant's motion for judgment on the pleadings (Dkt. No. 19) be **GRANTED**; and it is further

**RECOMMENDED,** that the decision of the Commissioner be **AFFIRMED**, and plaintiff's complaint (Dkt. No. 1) be **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of*

*Health and Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: September 19, 2023

Andrew T. Baxter
U.S. Magistrate Judge